**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY, LTD., *et al.*, | § § § § § | |
| *Plaintiffs,* | | |
| v. | § § § § § § | CIVIL ACTION H-10-2608 |
| MEDSOLUTIONS, INC., | | |
| *Defendant.* | | |

## MEMORANDUM AND ORDER

Pending before the court is defendant MedSolutions, Inc.'s motion for dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 5. Having reviewed the motion, response, reply, sur-reply, and applicable law, the court is of the opinion that all of plaintiffs' claims should be DISMISSED WITH PREJUDICE.

### I. BACKGROUND

Plaintiffs North Cypress Medical Center Operating Co., Ltd. and North Cypress Medical Center Operating Company GP, LLC (collectively, "North Cypress") are partners that own and operate an approximately 150-bed hospital facility in Houston, Texas. Dkt. 1. Defendant MedSolutions, Inc. is a third-party administrator that processes claims for several different insurers. Dkt. 5. North Cypress, which does not generally maintain preferred-provider contracts with health insurance companies, claims that MedSolutions intentionally delays healthcare claims from North Cypress patients who are seeking out-of-network benefits. Dkt. 7. North Cypress alleges that these delays result in steering patients away from North Cypress and towards in-network providers. *Id.* This, in turn, according to North Cypress, results in an unreasonable delay in the patients' care. *Id.*

## II. ERISA CLAIMS

MedSolutions moves to dismiss counts 1 through 5 of North Cypress's complaint under Federal Rule of Civil Procedure 12(b)(1), claiming that North Cypress does not have standing to bring the claims. Under section 602 of the Employee Retirement Income Security Act of 1974 ("ERISA"), a civil action may be brought by either the Secretary of Labor or a plan "participant," "beneficiary," or "fiduciary." 29 U.S.C. § 1132(a); *Hermann Hosp. v. MEBA Med. & Benefits Plan ("Hermann I")*, 845 F.2d 1286, 1287 (5th Cir. 1988). Additionally, a plan beneficiary may assign his or her right to sue, giving the assignee derivative standing. *Hermann I*, 845 F.2d at 1287.

North Cypress has the burden of showing that it has standing to sue. *See Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992)). North Cypress argues that it has standing because it received valid assignments of ERISA benefits from each of its patients. Dkt. 7. MedSolutions claims that the assignment provision signed by North Cypress's patients "grants the right to recover benefits for services rendered; nothing more and nothing less." Dkt. 5 at 5. As such, MedSolutions argues that the provision does not effectively assign the types of claims that North Cypress asserts.

MedSolutions claims that counts 1 through 5 of North Cypress's complaint are all essentially claims for breach of fiduciary duties under ERISA, and North Cypress does not dispute this assessment.[1] Accordingly, the court treats all five claims as fiduciary breach claims.

---

[1] Counts 1 through 5 are all ERISA claims. Count 1 is brought under 29 U.S.C. § 1132(a)(1)(B) and involves MedSolutions's alleged failure to comply with various ERISA plans by "making unreasonable delays with regard to the provision of authorizations for insured services and healthcare." Dkt. 1 ¶¶ 16-19. Count 2 is a claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) and involves MedSolutions's alleged "fail[ure] to act with the care, skill, prudence and diligence that a prudent third party administrator and/or fiduciary would use . . . ." *Id.* ¶¶ 20-27. Count 3 alleges that MedSolutions failed to provide a full and fair review pursuant to 29 U.S.C. § 1133. *Id.* ¶¶ 28-31. Count 4 alleges that MedSolutions failed to comply with claims procedures. *Id.* ¶¶ 32-36. And Count 5 involves MedSolutions's alleged failure or

In the Fifth Circuit, "only an express and knowing assignment of an ERISA fiduciary breach claim is valid." *Tex. Life, Accident & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord*, 105 F.3d 210, 218 (5th Cir. 1997).  "The starting place for construing a contract is its language."  *Tenn. Gas Pipeline Co. v. F.E.R.C.*, 17 F.3d 98, 103 (5th Cir. 1994) (citing *Mid La. Gas Co. v. F.E.R.C.*, 780 F.2d 1238, 1243 (5th Cir. 1986)).  The North Cypress assignment provision states:

> I HEREBY IRREVOCABLY ASSIGN AND TRANSFER TO THE HOSPITAL AND/OR HOSPITAL-BASED PHYSICIANS ALL RIGHT, TITLE AND INTEREST IN **ALL BENEFITS PAYABLE FOR THE HEALTHCARE RENDERED**, WHICH ARE PROVIDED IN ANY AND ALL INSURANCE POLICIES AND HEALTH BENEFIT PLANS FROM WHICH I AM ENTITLED SERVICES OR I AM ENTITLED TO RECOVER, I UNDERSTAND THAT ANY PAYMENT RECEIVED FROM THESES [sic.] POLICIES AND/OR PLANS WILL BE APPLIED TO THE AMOUNT THAT I HAVE AGREED TO PAY FOR SERVICES RENDERED DURING THIS ADMISSION, AS FURTHER DESCRIBED IN SECTION 2.
>
> This assignment shall be for the purpose of granting the hospital and/or hospital-based physicians <u>an independent right of recovery against my insurer or health benefit plan, but shall not be construed as an obligation of the hospital and/or hospital-based physicians to pursue such right of recovery</u>. . . . <u>I hereby appoint the hospital as my authorized representative to pursue, if it so chooses, all administrative remedies, claims and/or lawsuits on my behalf and at the hospital's election</u>, against any reasonable third party, medical insurer, or employer sponsored medical benefit plan for the purposes of collection and any and all hospital benefits due me for the payment of the charges referred to in section 2 above.[2]

Dkt. 13, Exh. A (bold emphasis added; italics and underlined emphasis in original).  There is no reference in this provision to fiduciary duties.  Instead, it refers to rights, title, and interest to "benefits payable for the healthcare rendered."

North Cypress argues that the "plain language of the Assignment of Benefits . . .

---

refusal to provide plan documents as required under 29 U.S.C. § 1132(c)(1)(B). *Id.* ¶¶ 37-38.

[2] North Cypress only provided the second and third pages of the contract.  Section 2, which is referred to in the assignment clause, is on the first page.

3

demonstrates that North Cypress has acquired standing to sue under ERISA for breach of fiduciary duty" as a breach of fiduciary duty "is certainly within the scope of an 'administrative remedy, claim and/or lawsuit.'" Dkt. 13 ¶ 2. Indeed, one could interpret the phrase "I hereby appoint the hospital as my authorized representative to pursue, if it so chooses, all administrative remedies, claims and/or lawsuits on my behalf and at the hospital's election" as conferring the right to pursue any claim to which the assignor is entitled—if one were to read that phrase in isolation. However, a "cardinal rule of contract interpretation in Texas requires courts to review the entire contract in order to determine its meaning; courts should not consider any single provision in isolation." *Tenn. Gas Pipeline*, 17 F.3d at 102 (citing *Eagle Life Ins. Co. v. G.I.C. Ins. Co.*, 697 S.W.2d 648, 650 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.)); *cf. Dallas Cnty. Hosp. Dist. v. Assocs. Health & Welfare Plan*, 293 F.3d 282, 288 (5th Cir. 2002) ("In interpreting the Plan document, we read the provisions not in isolation, but as a whole." (citations omitted)). "To the contrary, the goal of contract interpretation is to determine the parties' intentions by harmonizing and giving effect to each provision within the contract such that none is rendered meaningless." *Tenn. Gas Pipeline*, 17 F.3d at 102 (citing *R.R. Co. v. Androscoggin Mills*, 89 U.S. (22 Wall.) 594 (1874) (other citations omitted)). When one considers the cited phrase from the second paragraph of the assignment clause in light of the first paragraph, which expressly assigns rights, title, and interest in "all benefits payable for healthcare rendered," it becomes clear that the "administrative remedies, claims and/or lawsuits" referred to in the second paragraph are those that pertain to the benefits discussed in the first paragraph.

Moreover, even if one were to consider *only* the second paragraph, the last part of the sentence referring to "all administrative remedies, claims and/or lawsuits" clarifies which

4

"administrative remedies, claims, and/or lawsuits" the assignee may pursue; the assignee may act as the beneficiary's representative "for the purposes of *collection* and any and all hospital *benefits due me for the payment of the charges* referred to in section 2 above." Dkt. 13, Exh. A (emphasis added). This portion of the sentence significantly narrows the types of remedies, claims, and/or lawsuits assigned, and it does not mention claims for breach of fiduciary duties. Indeed, none of the types of claims asserted in North Cypress's complaint could be construed as "benefits due . . . for the payment of charges."

North Cypress also argues that the Fifth Circuit's holding in *Gaylord* establishes that "ERISA *encourages* derivative standing to sue for breach of fiduciary duty," and that this, along with the alleged express and knowing assignment, establishes subject matter jurisdiction. Dkt. 13 at 2-3 (citing *Gaylord*, 105 F.3d at 215-16). In *Gaylord*, the Fifth Circuit noted that "[a]llowing derivative standing to assignees in breach of fiduciary duty claims does not frustrate ERISA's purpose." *Gaylord*, 105 F.3d at 215. It reasoned that if derivative standing were not allowed, "plan administrators could never be held accountable for breaches of fiduciary duty" and that "allowing derivative standing advances ERISA's goal of safeguarding pension funds." *Id.* at 215-16. However, the *Gaylord* Court still required an *express and knowing assignment* of fiduciary duty claims, and, in fact, ultimately held that the fiduciary duty claims at issue were not validly assigned. *Id.* at 219. Likewise, the assignment at issue in this case is not an express and knowing assignment of fiduciary duty claims. Therefore, North Cypress does not have derivative standing to assert these claims.

North Cypress additionally argues that it has standing to bring these ERISA claims because the Fifth Circuit "allowed a provider such as North Cypress to bring derivative claims for breach of

fiduciary duty" in *Louisiana Health Service & Indemnity Co. v. Rapides Healthcare System*, 461 F.3d 529 (5th Cir. 2006). Dkt. 7 at 10. In *Rapides*, the Fifth Circuit considered whether ERISA preempted a Louisiana statute that prohibits entities that are obligated to reimburse individuals for services rendered by a hospital from paying the individual if the rights to payment have been assigned to the hospital. *Rapides*, 461 F.3d at 530-31. The Fifth Circuit held that the statute is not preempted by ERISA because it does not "relate to" an ERISA plan. *Id.* at 536-41. *Rapides* does not involve the assignment of breach of fiduciary claims and therefore is not on point.

In sum, because North Cypress's patients did not expressly and knowingly assign the right to assert ERISA fiduciary duty claims to North Cypress, it lacks standing to assert the claims. Accordingly, counts 1 through 5 are DISMISSED WITH PREJUDICE.[3]

### III. TEXAS INSURANCE CODE CLAIMS

In addition to its ERISA claims, North Cypress claims that "MedSolutions' [alleged] tactics to encourage physicians and patients to utilize only in-network benefits even when said patients have out-of-network coverage under policies and plans administered to by MedSolutions" violates section 1301.067 of the Texas Insurance Code. Dkt. 7 at 16. MedSolutions argues that North Cypress's Texas Insurance Code claim should be dismissed because section 1301.067 applies only to "insurers" and MedSolutions is an administrator, not an insurer. Dkt. 12. MedSolutions additionally notes that section 1301.067 specifically refers to a preferred provider contract, and North Cypress does not refer to a preferred provider contract in its complaint. *Id.* Finally, MedSolutions asserts that even

---

[3] MedSolutions presents several other arguments as to why North Cypress's various ERISA claims fail. However, since North Cypress does not have standing, the court need not reach MedSolutions's other arguments.

if North Cypress's claims were covered by the Texas Insurance Code, they would be preempted by ERISA. *Id.*

## A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal of a complaint if it believes that the plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Aschroft v. Iqbal,* __ U.S.__, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 127 S.Ct. 1955 (2007). The court must accept well-pleaded facts in support of the claim as true, and must also view those facts in the light most favorable to the party making the claim. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). Facts contained in the pleadings include all factual assertions found in the mandatory pleadings and responses, as well as the content of documents attached to the complaint. *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 n.4 (5th Cir. 1998). In addition, documents referenced in the complaint that are central to the claim will be considered to be incorporated therein. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (noting with approval that "various other circuits have specifically allowed that documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). In order to survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombley*, 550 U.S. at 570). This plausibility standard requires the plaintiff to plead facts sufficient to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, the plaintiff must demonstrate "more than a sheer possibility that the defendant has acted unlawfully." *Id.*

**B.** **"Insurer."**

North Cypress claims that MedSolutions violated section 1301.067 of the Texas Insurance Code by allegedly encouraging physicians and patients to use only in-network providers. Dkt. 7. MedSolutions claims that this statute applies only to "insurers" and that it is a third-party claims administrator, not an insurer. Dkt. 5. Section 1301.067(a) states:

> An insurer may not, as a condition of a preferred provider contract with a physician or health care provider or in any other manner, prohibit, attempt to prohibit, or discourage a physician or provider from discussing with or communicating to a current, prospective, or former patient, or a person designated by a patient, information or opinion:
>
> (1) regarding the patient's health care, including the patient's medical condition or treatment options; or
>
> (2) in good faith regarding the provisions, terms, requirements, or services of the health insurance policy as they relate to the patient's medical needs.

Tex. Ins. Code Ann. § 1301.067(a) (Vernon 2009). The Texas Insurance Code definitions pertaining to this section define "insurer" as "a life, health, and accident insurance company, health and accident insurance company, health insurance company, or other company operating under Chapter 841, 842, 884, 885, 982, or 1501, that is authorized to issue, deliver, or issue for delivery in this state health insurance policies." Tex. Ins. Code Ann. § 1301.001(5) (Vernon. Supp. 2009). North Cypress argues that MedSolutions is an insurer under this definition. However, North Cypress's complaint refers to MedSolutions as a "third party administrator which provides authorizations for certain medical procedures covered under out-of-network plan benefits." Dkt. 1 ¶ 9. It does not allege that MedSolutions "is authorized to issue, deliver, or issue for delivery . . . health insurance policies." Thus, relying on the facts alleged in the complaint and the plain language of the statute,

8

North Cypress's complaint does not adequately allege that MedSolutions is an "insurer" under the Texas Insurance Code.

Notwithstanding the plain language of the statute, North Cypress additionally argues that the Texas Supreme Court has held that "a mere administrator can be an 'insurer' within the context of the Texas Insurance Code." Dkt. 7 at 17. North Cypress cites *Toranto v. Blue Cross Blue Shield of Texas, Inc.*, 993 S.W.2d 648, 649 (Tex. 1999), for this contention. In *Toranto*, the defendant, Blue Cross and Blue Shield of Texas ("BCBS"), was a claims administrator for claims made by state employees who were insured under the Employees Retirement System of Texas ("ERS"). *Toranto*, 993 S.W.2d at 648. The plaintiff, a surgeon who performed surgery on a patient covered by the ERS, sued BCBS after it failed to pay a claim relating to the surgery directly to the surgeon, even though the patient had assigned her benefits to the surgeon. *Id.* at 648-49. Among other arguments, BCBS argued that it was not an "insurer" under the Texas Employees Uniform Group Insurance Benefits Act. *Id.* at 649. The Texas Supreme Court considered the statutory definition of "insurer" under the Act, and determined that BCBS was an insurer "because it is authorized to act as ERS' administering firm under Chapter 3 [of the Texas Insurance Code]." *Id.* at 649.

North Cypress claims that the definition of "insurer" considered by the Texas Supreme Court in *Toranto* is "similar" to the definition of "insurer" at issue here. Dkt. 7 at 19. The *Toranto* Court relied on a previous version of section 1204.051(6) of the Texas Insurance Code, which defined "insurer" as including "insurance companies, associations, and organizations 'authorized to do business in this state under Chapter 3 . . . of [the Insurance Code].'" *Toranto*, 993 S.W.2d at 649 (quoting Tex. Ins. Code art. 21.24-1 § 1(6) (repealed 2003)); *see also* Tex. Ins. Code § 1204.051(6) (Vernon 2009) (current version of statute discussed in *Toranto*). This statute did not

9

specifically limit the definition of "insurer" to companies that are authorized to issue, deliver, or issue for delivery health insurance policies. Section 1301.001 does limit the definition of "insurer" in this way. *Compare* Tex. Ins. Code Ann. § 1301.001(5), *with* Tex. Ins. Code Tex. Ins. Code art. 21.24-1 § 1(6) (repealed 2003). Thus, the definition of "insurer" considered by the court in *Toranto* is not similar to the definition of "insurer" in section 13.001 and *Toranto* is not on point.[4]

Because North Cypress's complaint fails to state facts sufficient to show that MedSolutions is an "insurer" under section 1301.001, North Cypress fails to state a claim under the Texas Insurance Code. Since MedSolutions prevails on this argument, there is no need to address MedSolutions's preemption argument or its argument relating to the text of section 1301.067.

## IV. OTHER CLAIMS

North Cypress's complaint asserts three additional counts, which also must be dismissed. Count 6 of North Cypress's complaint requests declaratory relief and a permanent injunction requiring MedSolutions to "promptly provide authorizations to North Cypress for out-of-network coverage . . . ." Dkt. 1 ¶¶ 39-40. This relief is requested pursuant to 28 U.S.C. § 2201, which allows courts to issue declaratory relief in cases of "actual controversy." 28 U.S.C. § 2201; *Tilley Lamp Co. v. Thacker*, 454 F.2d 805, 807-08 (5th Cir. 1972). Since North Cypress lacks standing to bring its ERISA claims and it fails to state a claim for which relief can be granted under the Texas Insurance

---

[4] The definitions set forth in section 1204.051 apply specifically to the subchapter of the Texas Insurance Code dealing with assignment of benefit payments. *See* Tex. Ins. Code Ann. § 1204.051. The definitions contained in section 1301.001 apply to the chapter dealing with preferred provider benefit plans. *See id.* § 1301.001. The section of the Texas Insurance Code that North Cypress alleges MedSolutions violated, section 1301.067, is in the chapter dealing with preferred provider benefit plans.

Code, there is no actual controversy for the court to address. Accordingly, North Cypress's claims under the Declaratory Judgment Act are DISMISSED WITH PREJUDICE.

Count 8 of North Cypress's claim requests attorneys' fees, and count 9 requests punitive and exemplary damages. Both of these requests hinge on the success of North Cypress's other claims, all of which are being dismissed. Accordingly, claims 8 and 9 are also DISMISSED WITH PREJUDICE.

## V. CONCLUSION

Counts 1 through 5 of North Cypress's complaint are DISMISSED with prejudice because North Cypress lacks standing to bring these claims. Count 7 is DISMISSED with prejudice because MedSolutions is not an "insurer" under section 1301.067 of the Texas Insurance Code. Counts 6, 8, and 9, which are dependent upon the success of the other claims, are also DISMISSED with prejudice.

Signed at Houston, Texas on November 10, 2010.

_____
Gray H. Miller
United States District Judge